**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Rodney Lee Furne,<br><br>    Plaintiff,<br><br>vs.<br><br>Michael J. Astrue,<br><br>    Defendant. | No. CV10-00908-PHX-NVW<br><br>**ORDER** |

Plaintiff Rodney Lee Furne seeks review, pursuant to 42 U.S.C. § 405(g), of the administrative denial of his application for social security disability insurance benefits and supplemental security income. Because the administrative law judge's ("ALJ") decision was not based on legal error, the Commissioner's decision will be affirmed.

**I.     Background**

    **A.     Procedural History**

On June 24, 2005, Furne filed applications for Title II disability insurance benefits and Title XVI supplemental security income, alleging a disability onset date of October 26, 2004. His applications were denied initially and upon reconsideration. Furne had a hearing before an ALJ on September 18, 2007, at which an impartial vocational expert testified. The ALJ issued an unfavorable decision on October 25, 2007; the SSA Appeals Council denied Furne's subsequent request for review and the ALJ's decision became the final decision of the Social Security Commissioner. Pursuant to 42 U.S.C. §405(g), Furne sought judicial

review of the ALJ's decision in this Court.

B. **Factual Background**

Furne was born on October 25, 1955. He was 52 years old at the time of the ALJ's decision. He has past relevant work experience as a pari-mutuel cashier, slot machine assembler, heating and air conditioning technician, and warehouse hand. Furne is a high school graduate and has an associate's degree in electronics. He also has vocational certificates in accounting and refrigeration.

Furne suffers from degenerative disc disease of the lumbar spine, recurrent hernia, gastrointestinal reflux disorder, and high blood pressure. Furne alleges that his lower back pain, which also radiates through his right hip and down the back of his right leg, is his most severe and disabling impairment. His back pain stems from a work-related injury he sustained in 1998 while moving a slot machine for repair, which was aggravated on November 30, 2001, when Furne re-injured his back moving a machine at work. He has not worked since the November 30, 2001 injury.

Furne claims that his back pain makes it difficult for him to walk or climb stairs easily, and that he can only stand for about thirty minutes before needing to sit and rest. He also states that his back pain causes him to spend about a third of the workday resting. Furne takes medication, receives trigger point injections and radio frequency ablations, rests, and uses a self-obtained cane to alleviate his back pain. Furne's recurrent hernias have been surgically repaired and his gastrointestinal reflux disorder has improved with treatment and his cessation of smoking.

## II. Standard of Review

The Court will uphold the Commissioner's final decision if it is supported by substantial evidence and not based on legal error. *See* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"); *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). The substantial evidence standard requires the evidence to "be more than a mere scintilla but not necessarily a preponderance." *Tomassetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations

1  omitted). The Court must consider the "entire record as a whole and may not affirm simply
2  by isolating a 'specific quantum of supporting evidence.'" *Orn v. Astrue*, 495 F.3d 625, 630
3  (9th Cir. 2007) (citations omitted).

4  The Court will also review only the issues raised by the party challenging the ALJ's
5  decision. *See Lewis v. Apfel*, 235 F.3d 503, 517 n.13 (9th Cir. 2001). The ALJ's decision
6  will be upheld where the "evidence is susceptible to more than one rational interpretation"
7  and the ALJ's decision is supported by one such rational interpretation. *Orn*, 495 F.3d at
8  630. The court will not reverse for harmless error, which exists "when it is clear from the
9  record that 'the ALJ's error was inconsequential to the ultimate nondisability
10 determination.'" *Tomassetti*, 533 F.3d at 1038 (citations omitted).

11 If the ALJ's decision is not supported by substantial evidence or suffers from legal
12 error, the court has discretion to reverse and remand either for an award of benefits or for
13 further administrative proceedings. *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996);
14 *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). "Remand for further proceedings
15 is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d
16 587, 593 (9th Cir. 2004). "Conversely, where the record has been developed fully and further
17 administrative proceedings would serve no useful purpose, the district court should remand
18 for an immediate award of benefits." *Id.* (citing *Smolen*, 80 F.3d at 1292).

19 **III.    Analysis**

20 To determine whether a claimant is disabled, the ALJ conducts a five-step analysis
21 as outlined in 20 C.F.R § 404.1520(a)(4). At step one, the ALJ found that Furne has not
22 engaged in substantial gainful activity since his alleged disability onset date. At step two,
23 the ALJ found that Furne had the following severe impairments: recurrent hernia,
24 degenerative disc disease of the lumbar spine causing chronic low back pain, gastroesphageal
25 reflux disease, and high blood pressure. At step three, the ALJ found that Furne did not have
26 an impairment or combination of impairments that met or medically equaled one of the listed
27 impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d),
28 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). Furne does not allege error with

respect to the ALJ's findings in steps one, two and three.

After step three, the ALJ assessed Furne's residual functional capacity and found he could perform a range of light work, including: lift or carry ten pounds frequently and twenty pounds occasionally; occasionally climb, stoop, kneel, crouch and crawl; and sit, stand, or walk for about six hours in an eight-hour workday with a sit/stand option. At step four, the ALJ determined that Furne has the residual functional capacity to perform the requirements of his past relevant work, specifically as a ticket cashier and an electronics test technician, positions which only require a light level of exertion. Finally, at the fifth step, the ALJ determined that even if Furne would not be able to perform his past relevant work, a finding of "not disabled" would nonetheless be required under Medical-Vocational Rule 202.21. Furne alleges the ALJ erred by failing to properly assess Furne's residual functional capacity, properly weigh the medical source opinion evidence and Furne's credibility.

### A. Furne's Credibility and Subjective Pain Testimony

The ALJ engages in a two-step analysis when evaluating a claimant's testimony as to subjective pain or other symptoms. *See Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). The ALJ must first determine that "the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged" and that the claimant is not malingering. *Id.* If the ALJ finds the claimant's testimony is not credible, he must provide specific, clear and convincing reasons for so finding. *Id.* Further, if the ALJ's "credibility finding is supported by substantial evidence in the record, [the reviewing court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

When evaluating the intensity and persistence of a claimant's symptoms, the ALJ considers a broad range of factors in addition to the claimant's own statements regarding the limitations caused by her symptoms. These factors include the claimant's daily activities, effectiveness of any medication or treatment in controlling the symptoms, objective medical evidence of the symptoms, and statements by treating and non-treating sources about how a claimant's symptoms affect his ability to work. *See* 20 C.F.R. §404.1529(c). With respect

to daily activities, a claimant is not required to be "utterly incapacitated" to be found disabled. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). However, if a claimant is able to
> perform household chores and other activities that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that [a claimant's] pain does not prevent [the claimant] from working...a specific finding as to this fact may be sufficient to discredit an allegation of disabling excess pain. (*Id.*)

Further, "[w]hile subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ considered the evidence and found that while Furne had produced objective medical evidence of an impairment which could reasonably produce his alleged symptoms, his "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. 29.) The ALJ did not simply omit reference to Furne's pain symptoms or rely solely on objective medical evidence in finding Furne less than credible. Rather, he acknowledged the symptoms Furne described, but went on to give specific reasons based on the evidence in record for discounting Furne's credibility as to the severity and disabling affect of his pain. First, the ALJ found that Furne's statements regarding the extent of his pain were inconsistent with much of the objective medical evidence presented, and that clinical signs and diagnostic findings did not show Furne's condition to be as disabling as he claimed. For example, the ALJ pointed to examinations of Furne's lumbar spine showing that it "is normal without muscle spasms, tenderness or step offs . . . has a normal range of motion with no sign of a nerve or spinal cord tension or compression . . . [and] has normal muscle strength, tone and size[.]" (Tr. 29.) The ALJ also pointed to x-rays of Furne's spine showing only mild abnormalities. (*Id.*) Second, the ALJ noted that Furne's pain had been treated conservatively, with injections and medication instead of surgery. Finally, the ALJ also credited evidence that treatment had been successful in controlling Furne's symptoms, weighing against Furne's credibility regarding the severity and disabling affect of his pain.

Accordingly, the ALJ did not err in discounting Furne's subjective pain testimony.

**B.      Residual Functional Capacity Assessment and Medical Opinion Evidence**

Furne alleges that the ALJ did not properly weigh the various medical source opinions in the record. When presented with conflicting medical opinions, the ALJ must make credibility determinations and resolve any conflicts or ambiguities. *See Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). In reviewing the ALJ's reasoning, the Court is "not deprived of [its] faculties for drawing specific and legitimate inferences from the ALJ's opinion." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989).

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight should be given to the opinion of a treating physician than to the opinions of non-treating physicians. *Id.* Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Lester,* 81 F.3d at 830. Moreover, the Commissioner must give weight to the treating physician's subjective judgments in addition to his clinical findings and interpretation of test results. *Id.* at 832-33.

Further, an examining physician's opinion generally must be given greater weight than that of a non-examining physician. *Id.* at 830. As with a treating physician, there must be clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician, and specific and legitimate reasons, supported by substantial evidence in the record, for rejecting an examining physician's contradicted opinion. *Id.* at 830-31.

The opinion of a non-examining physician is not itself substantial evidence that justifies the rejection of the opinion of either a treating physician or an examining physician. *Id.* at 831. "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or

other evidence in the record." *Thomas*, 278 F.3d at 957. Factors that an ALJ may consider when evaluating any medical opinion include "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion." *Orn*, 495 F.3d at 631.

Moreover, Social Security Rules expressly require a treating source's opinion on an issue of a claimant's impairment be given *controlling* weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). If a treating source's opinion is not given controlling weight, the weight that it will be given is determined by length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, relevant evidence supporting the opinion, consistency with the record as a whole, and the source's specialization. *Id.*

Finding that a treating physician's opinion is not entitled to controlling weight does not mean that the opinion should be rejected:

> [A] finding that a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. §404.1527. . . . In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*Orn*, 495 F.3d at 631-32 (quoting Social Security Ruling 96-2p). Where there is a conflict between the opinion of a treating physician and an examining physician, the ALJ may not reject the opinion of the treating physician without setting forth specific, legitimate reasons supported by substantial evidence in the record. *Id.* at 632.

### 1. ALJ's Weighing of the Medical Opinion Evidence

In assessing the weight to be accorded to the various medical opinions on record to determine Furne's residual functional capacity, the ALJ gave the opinions of "the consultative examiners" and treating physicians Pitt, Cohen, and Borjeson substantial weight,

- 7 -

finding their opinions to be consistent with the record and based on objective evaluations of Furne. (Tr. 31.) The ALJ gave the state agency medical opinions "weight" because he found them to be generally consistent with the whole record. (*Id.*) These physicians generally assessed Furne as suffering from fewer limitations and retaining a relatively higher residual functional capacity than the assessments of Drs. Simchak and Shafran.

Dr. Simchak, an examining physician, found Furne could lift or carry a maximum of ten pounds and sit, stand or walk for less than two hours in an eight-hour workday. (*Id.*) Dr. Shafran, a treating physician, found that Furne could lift or carry five pounds frequently and ten pounds occasionally, and sit, stand, or walk for a total of three hours in an eight-hour workday. (*Id.*) With respect to Drs. Simchak and Shafran, the ALJ stated that their opinions were "given weight to the extent that it shows that the claimaint is not as limited in his functional abilities as he claimed to be[,]" but that with respect to Furne's overall functional abilities, their opinion "do not appear to be based on independent clinical or laboratory findings, but appear to be primarily reliant on [Furne's] subjective complaints." (Tr. 31-32.) He accordingly gave the opinions of Drs. Simchak and Shafran "less weight with regard to [Furne's] overall functional ability." (Tr. 32.)

Furne claims that the ALJ erred in weighing the medical opinions of Drs. Simchak and Shafran. Although the ALJ identifies Dr. Simchak as a treating physician in his decision, and Furne argued the same in his opening brief, the Commissioner's response clarifies that Dr. Simchak is not, in fact, a treating physician, but merely examined Furne on one occasion. (Doc. 18 at 21.) In his reply, Furne acknowledges that Dr. Simchak is in fact a consultative examiner, and not a treating physician. (Doc. 24 at 7.) Nonetheless, Furne continues to allege that the ALJ's failure to "identify any reason for giving [Dr. Simchak's] opinion less weight than other consultative examiner opinions" is error. (*Id.*) This argument is unavailing. Although the ALJ did improperly identify Dr. Simchak as a treating physician and analyzed his opinion under the treating physician rubric, the reasons he gave for giving Dr. Simchak's opinion less weight apply equally to justify giving Dr. Simchak's opinion less weight as a consultative examiner. The ALJ explained that Dr. Simchak's opinion was given

weight to show Furne was not as limited as he claimed to be, but was discounted as to Furne's overall functional ability because his opinion was based primarily on Furne's unsupported subjective claims instead of independent clinical or laboratory findings. (Tr. 31-32.) He also explained that the other consultative examiners' findings were more consistent with the record and medical findings as a whole. These reasons are sufficient to explain why Dr. Simchak's opinion was given less weight than the opinion of the other consultative examiners, who found Furne to have fewer limitations in his residual functional capacity.

Furne further alleges that the ALJ's weighing of the medical opinion evidence is "self-conflicting" because the ALJ found Furne to be more limited than some of the consultative examiners opined. (Doc. 15 at 20-21.) However, Furne provides no authority to support his argument that if the ALJ gives a consulting physician's opinion substantial weight, he is required to conform his residual functional capacity assessment exactly to the consulting physician's assessment. Rather, the ALJ is entitled to consider the record as a whole, give weight to various medical opinions, and complete his residual functional capacity assessment based on all of the evidence presented. In fact, the ALJ's decision shows he credited several medical opinions, not only the ones that assessed Furne with fewer limitations than the ALJ's ultimate residual functional capacity assessment. Indeed, the more limited assessment that the ALJ ultimately adopted shows the ALJ considered the clinical and diagnostic findings of some impairment in addition to the opinions of the various medical sources in reaching his assessment. Accordingly, there is no reversible error on this basis.

Finally, Furne's opening brief focuses primarily on why the ALJ erred in evaluating Dr. Simchak's opinion under the mistaken identification of Dr. Simchak as a treating physician. In his reply brief, Furne acknowledges this mistake and attempts to shift focus by alleging error in the evaluation of Dr. Shafran's opinion, arguing that the ALJ set forth "no reason" for rejecting Dr. Shafran's opinion. (Doc. 24 at 7.) While this argument is untimely, in any event, Dr. Shafran's opinion was considered and given some weight. Further, the ALJ did explain that he gave less weight to Dr. Shafran's opinion with respect to Furne's overall functional abilities because his opinion was based primarily on Furne's

1 unsupported subjective claims, instead of independent clinical or laboratory findings. (Tr.
2 31-32.) There is therefore no reversible error with respect to the weighing of the medical
3 opinion evidence.

### C. Compliance with Social Security Ruling 83-20

Furne also alleges that the ALJ failed to comply with SSR 83-20 by not calling a medial expert to aide in determining the onset date of Furne's disability. However, because the ALJ did not find that Furne had ever been disabled, there was no need to infer an onset date of disability; there is no need to establish an onset date, and have that date confirmed by a medical expert, where there is no finding of disability. *See Sam v. Astrue*, 550 F.3d 808, 809 (9th Cir. 2009) (noting that "SSR 83-20 does not require a medical expert where the ALJ explicitly finds that the claimant has never been disabled"). Because Furne's argument that the ALJ failed to comply with SSR 83-20 by not calling a medical expert to determine the disability onset date is explicitly foreclosed by *Sam*, there is no reversible error.

### D. Past Relevant Work

Furne also claims the ALJ erred in his evaluation of Furne's ability to perform his past relevant work. The ALJ found that Furne was capable of performing his past work as a ticket cashier, which is unskilled work performed at a light exertional level, and as an electronics test technician, which is semi-skilled work performed at a light exertional level.

During Furne's hearing, the vocational expert testified regarding Furne's ability to perform past relevant work and the restraints of the sit/stand option. Specifically, the vocational expert testified that "it's possible that the mutual ticket cashier" work could be performed with a sit/stand option, but that such work would "require an employer to provide a stool and allow the person to use that. And that's not always the case." (Tr. 1039.) The vocational expert accordingly noted that the ticket cashier position would require special accommodations. (*Id.*) Further, the vocational expert stated that the ticket cashier position was Furne's only past relevant work that could be performed with a sit/stand option; "[n]one of [Furne's] other work could be performed" if a sit/stand option were required. (*Id.*)

The ALJ, in his residual functional capacity assessment of Furne, determined that

Furne required a sit/stand option for future employment. It was therefore error for the ALJ to state that Furne could perform his past relevant work as an electronics test technician, since the vocational expert testified that a person who required a sit/stand option could not perform the work of an electronics test technician. However, this error is harmless because the ALJ identified other past relevant work, namely as a ticket cashier, which would be available to Furne with a sit/stand option. Furne does not need to be capable of doing all of his past relevant work in order to be found not disabled; there only needs to be some past relevant work available to him to support a finding of non-disability at this step. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1560(b) ("If [claimant has] the residual functional capacity to do [his] past relevant work . . . [claimant is] not disabled."). The vocational expert's testimony that Furne's work as ticket cashier could be performed with a sit/stand option, coupled with the ALJ's residual functional capacity assessment showing the nature of the sit/stand option in finding that Furne could sit or stand for six hours in an eight hour workday, is sufficient to support the ALJ's finding that Furne could perform his past relevant work. *See Vertigan v. Halter*, 260 F.3d 1044, 1051 (9th Cir. 2001) (citing *Matthews v. Shalala*, 10 F.3d 678, 681(9th Cir. 1993)) ("The burden is on the claimant to prove that []he cannot perform past relevant work."). There was accordingly no reversible error at this step. *See Tomassetti*, 533 F.3d at 1038 (noting an ALJ's error is harmless and non-reversible when it is "'inconsequential to the ultimate nondisability determination'") (internal citation omitted).

IT IS THEREFORE ORDERED that the final decision of the Commissioner of Social Security is affirmed.

IT IS FURTHER ORDERED that the Clerk enter judgment in favor of Defendant and against Plaintiff and that Plaintiff take nothing. The Clerk shall terminate this action.

DATED this 24th day of August, 2011.

_____
Neil V. Wake
United States District Judge